IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                         CIVIL ACTION NO.: 3:24-CV-15 (GROH)

THE RENOVO CENTER, LLC and
MELISSA SWARTZ,

        Defendants.

## MEMORANDUM OPINION AND ORDER

    Melissa Swartz is the owner and operator of The Renovo Center, a limited liability company providing counseling services in West Virginia. The Government alleges Defendants violated the False Claims Act by billing for procedures they were not licensed or credentialed to provide, resulting in a loss of $348,795.69. ECF No. 89-1 at 30. The parties agree summary judgment is appropriate because there is no genuine dispute as to any material fact and have cross-moved for summary judgment.

### I. Applicable Legal Standards

    Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586. That is, once the movant has met its burden to show an absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence establishing there is indeed a genuine issue for trial. Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted).

A motion for summary judgment should be denied "if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions." Phoenix Savs. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967); see also id. at 253 ("[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

## II. Discussion

"The False Claims Act imposes liability on any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval or who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." United States ex rel. Taylor v. Boyko, 39 F.4th

177, 188 (4th Cir. 2022) (quoting 31 U.S.C. § 3729(a)(1)(A), (B) (internal quotation marks omitted)). When affirming an order granting summary judgment in a defendant's favor, the Fourth Circuit explained that "its binding precedent require[d it] to conclude that [plaintiff] did not clear the high hurdles erected by the False Claims Act." Id. at 201–02.

The False Claims Act (FCA) "is a fraud prevention statute." United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 728 (4th Cir. 2010). It imposes civil liability on "any person who . . . knowingly presents, or causes to be presented" to the federal Government "a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). "Direct requests to the Government for payment as well as reimbursement requests made to the recipients of federal funds under federal benefits programs, such as Medicaid, may give rise to a claim under the Act. United States ex rel. Gugenheim v. Meridian Senior Living, LLC, 36 F.4th 173, 179 (4th Cir. 2022) (cleaned up).

To establish a claim under the False Claims Act, a plaintiff must establish four elements: (1) "there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a 'claim')." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 788 (4th Cir. 1999). Failure to adequately allege any of these elements "dooms" a claim. Boyko, at 188.

The Supreme Court has noted that "billing parties are often subject to thousands of complex statutory and regulatory provisions. Facing False Claims Act liability for violating any of them would hardly help would-be defendants anticipate and prioritize

compliance obligations." Universal Health Servs., Inc. v. United States ex rel. Escobar, 579 U.S. 176, 192 (2016).

"[I]nstead of adopting a circumscribed view of what it means for a claim to be false or fraudulent, concerns about fair notice and open-ended liability can be effectively addressed through strict enforcement of the Act's materiality and scienter requirements. Those requirements are rigorous." Id. (cleaned up).

"The Act's scienter requirement defines 'knowingly' to mean that a person 'has actual knowledge of the information,' 'acts in deliberate ignorance of the truth or falsity of the information,' or 'acts in reckless disregard of the truth or falsity of the information.' 31 U.S.C. § 3729(b)(1)(A). It does not require 'specific intent to defraud,' id. § 3729(b)(1)(B), but neither does it punish 'honest mistakes or incorrect claims submitted through mere negligence,' Owens, 612 F.3d at 728 (internal quotation marks omitted)." United States ex rel. Gugenheim v. Meridian Senior Living, LLC, 36 F.4th 173, 179 (4th Cir. 2022).

When a nonmoving party fails to make a sufficient showing on an essential element, summary judgment is warranted. Celotex, 477 U.S. at 323. "This includes a state-of-mind element like scienter." Gugenheim, at 178–79 (4th Cir. 2022) (citing Skibo ex rel. United States v. Greer Labs., Inc., 841 Fed. App. 527, 532 (4th Cir. 2021) (rejecting the argument that "summary judgment is never appropriate on the element of knowledge")).

Similarly, "[t]he materiality standard is demanding. The False Claims Act is not an all-purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations." Escobar, at 194 (cleaned up). "Whether a provision is labeled a condition of payment is relevant to but not dispositive of the materiality inquiry."

4

Id. at 190. Indeed, a "misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance." Id. at 194. Materiality "cannot be found where noncompliance is minor or insubstantial." Id.

"What matters is not the label the Government attaches to a requirement, but whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision." Id. at 181. "A misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act[,]" and the Supreme Court has clarified "how that rigorous materiality requirement should be enforced." Id.

Defendants argue, among other things, that the Government cannot prove intent, and there is no evidence of materiality. ECF No. 86-1 at 16-24. The Court will discuss each of these elements in turn below.

    **a.  The Government has not met its burden regarding** Defendants' **intent.**

To succeed on each claim in its amended complaint at trial, the Government must establish that Defendants made false statements or engaged in a fraudulent course of conduct "with the requisite scienter." ECF No. 89-1 at 19 (quoting U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008)). "The Act's scienter requirement defines. . . . 'knowingly' to mean that a person has 'actual knowledge of the information,' 'acts in deliberate ignorance of the truth or falsity of the information,' or 'acts

5

in reckless disregard of the truth or falsity of the information.'" United States ex rel. Taylor v. Perni, No. 2:17-CV-04213, 2020 WL 2499544, at *5 (S.D. W. Va. May 14, 2020), aff'd sub nom. United States ex rel. Taylor v. Boyko, 39 F.4th 177 (4th Cir. 2022) (quoting Universal Health, 579 U.S. at 182).

"The False Claims Act expressly extends liability to parties acting in 'deliberate ignorance' or with 'reckless disregard' of the truth or falsity of a given statement—situations where an entity has 'buried [its] head in the sand' and failed to make simple inquiries which would alert [it] that false claims are being submitted.'" Boyko, at 198 (quoting United States v. Bourseau, 531 F.3d 1159, 1168 (9th Cir. 2008) (cleaned up)).

The Government contends Defendants acted with the requisite intent "by deliberately ignoring or recklessly disregarding the accuracy of the claims" they submitted. ECF No. 89-1 at 20. In its response, the Government refers to Defendants as "ostriches" after explaining that Defendant Swartz testified she was aware of the BMS manual in late 2016 or 2017, received a "vast majority" of Renovo's income from billing UniCare, and "was unaware of the BMS manual requirements, but stopped billing these codes when she learned they were improper." ECF No. 91 at 18. The Government also points to its expert's report, which says, "Ms. Swartz is in violation of the False Claims Act, and her multi-year neglect in correcting her records speaks to reckless disregard or deliberate ignorance of the rules, regulations and laws that she contracted to uphold." Id.

"The term 'reckless disregard' similarly captures defendants who are conscious of a substantial and unjustifiable risk that their claims are false, but submit the claims anyway." United States ex rel. Schutte v. SuperValu Inc., 598 U.S. 739, 751 (2023). This is aligned with "traditional common-law fraud, which ordinarily 'depends on a subjective

6

test' and the defendant's 'culpable state of mind.' Id., § 10, Comment *a*. What typically matters at common law is whether the defendant made the false statement 'without belief in its truth or recklessly, careless of whether it is true or false.'" United States ex rel. Schutte v. SuperValu Inc., 598 U.S. 739, 752, 143 S. Ct. 1391, 1401, 216 L. Ed. 2d 1 (2023) (quoting Restatement (Second) of Torts § 526, Comment *e*.

Although "ostrich defendants" may be liable for submitting fraudulent claims while burying their heads in the sand, the Fourth Circuit has also explained that "[b]ad math is no fraud, [and] proof of mistakes is not evidence that one is a cheat." Gugenheim, 36 F.4th 173, 179 (quoting Owens, at 734 (internal quotation marks omitted)).

In Gugenheim, the Fourth Circuit affirmed an order dismissing plaintiff's FCA case on summary judgment despite evidence that "Defendants intentionally billed the government for the maximum amount of compensable time for personal care services (PCS) to every Medicaid beneficiary in every one of their adult care homes, without any inquiry whatsoever into what services the beneficiaries actually received." 36 F.4th at 183 (Traxler, J., dissenting). Based on the billing method defendants used, the evidence tended to show that "1,900,000 false claims [were] submitted to the Medicaid program for payment. Over a five-year period, the losses to the Medicaid program from this overbilling could exceed $40,000,000." Id.

Like the case before this Court, the plaintiff in Gugenheim argued that defendants "acted with reckless disregard or deliberate ignorance of the alleged falsity of their bills when they billed Medicaid for PCS based on a census method rather than based on the hours their employees actually spent providing PCS to each beneficiary." Id. at 179. But the Court explained, "summary judgment is warranted if Gugenheim has failed to marshal

7

evidence from which a reasonable jury could find that Defendants acted with the requisite state of mind." Id. Gugenheim pointed the Fourth Circuit to the policy, claiming the language was so clear that Defendants were on notice they needed to bill their clients using a different method. Thus, they violated the FCA. Id.

The Fourth Circuit's inquiry was not whether defendants' interpretation of the policy was correct. Instead, it found enough ambiguity existed within the applicable framework that it could not "infer scienter from an alleged regulatory violation itself[.]" Id. at 181.

Defendants present the same argument: "A defendant cannot have the requisite knowledge for an FCA claim where (1) the relevant governmental requirement is ambiguous, (2) the defendant consistently and reasonably sought and followed the guidance of its contracting authority, which it was obligated to do, and (3) the defendant subjectively believed she was doing the right thing." ECF No. 86-1 at 20 (citing U.S. ex rel. Donegan v. Anesthesia Assocs. of Kansas City, PC, 833 F.3d 874, 878-90 (8th Cir. 2016); U.S. ex rel. Williams v. Renal Care Grp., Inc., 696 F.3d 518, 531 (6th Cir. 2012).

The Government's ability to demonstrate that Defendants possessed the requisite intent relies on its "theory of 'deliberate ignorance' or 'reckless disregard.'" ECF No. 91 at 20 (quoting 31 U.S.C. § 3729(b)(1)(A)). Relying on a twenty-year-old Ninth Circuit case, the Government asserts Defendants had "a duty to familiarize themselves with the legal requirements for payment and the consequences of their actions." Id. at 17 (citing United States v. Mackby, 261 F.3d 821, 828 (9th Cir. 2001). Mackby is not persuasive for several reasons.

First, this Court is not bound by decisions of Courts of Appeal beyond this Circuit. Extrajudicial decisions may still be helpful or persuasive. In Mackby, the defendant

8

assumed control of a clinic and "instructed Medicom, the clinic's billing service, to substitute the PIN of his father, M. Judson Mackby, M.D. (Dr. Mackby), for Leary's PIN on Asher Clinic's Medicare Part B claims. Mackby also told Maridy Barnett, the clinic's office manager, to use his father's PIN in billing third-party payers, including Medicare." Id. at 825. This was quite problematic because, as the district court found, "Dr. Mackby did not know that his PIN was being used by Asher Clinic to bill Medicare for physical therapy services." Id. Even more egregiously, it was "undisputed that Dr. Mackby never provided medical services at or for Asher Clinic, never referred any patients to the clinic and was never involved with the care or treatment of its patients." Id.

Simply stated, the facts in Mackby are so far adrift of even the Government's allegations (much less evidence) in this case, that it is readily distinguishable. Because it has no precedential value, was decided before SuperValu, and is factually distinguishable, the Court finds Mackby inapposite to determining whether the Government can meet its burden on Defendants' intent.

The Supreme Court has explained that "[t]he FCA's scienter element refers to respondents' knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed." United States ex rel. Schutte v. SuperValu Inc., 598 U.S. 739, 749 (2023). The Government offers no evidence that Defendants either knew or believed that false claims were being submitted.

Instead, the Government relies on the number of violations, that most of Renovo's clients were paying for services through UniCare, that Defendant Swartz testified she learned about the BMS Manual in late 2016 or 2017, and its expert's legal conclusion on

9

the ultimate issue in this case. In short, the Government has produced no evidence to satisfy the intent element of its claims.

Even the Government acknowledges Defendant "Swartz repeatedly testified that she was unaware of the BMS manual requirements, but stopped billing these codes when she learned they were improper." ECF No. 91 at 18. Just like the Gugenheim Court found, this Court finds the evidence suggests the opposite of the Government's contention. 36 F.4th at 181-82. The Defendants' actions here "do not betoken a deliberate effort to avoid learning the truth." Id. at 182. Defendants have submitted evidence to support their position that they sought to comply with the UniCare contract, sought guidance, and adjusted their practices as a result. This is a far cry from the defendant in Mackby using his doctor father's PIN to bill at a higher rate despite his father never having been to the clinic.

The Court also finds it relevant that UniCare audited Renovo and found certain codes at issue were billed correctly. ECF No. 86-1 at 19 n.9. This further supports Defendants' contention that their subjective knowledge was reasonable while navigating "thousands of complex statutory and regulatory provisions." Escobar, 579 U.S. at 192.

For these reasons and those more fully stated in Defendants' briefing, supported by their exhibits, the Court finds the Government has not identified evidence from which a reasonable jury could conclude that Defendants claims to UniCare were submitted in deliberate ignorance or with reckless disregard for the truth.

    **b. Materiality is fatally lacking.**

In Escobar, a unanimous Supreme Court clarified how the FCA's "rigorous materiality requirement should be enforced." 579 U.S. at 181. It also explained that "[w]hat

matters is not the label the Government attaches to a requirement, but whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision." Id. "[T]he term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." Id. at 192–93 (quoting 31 U.S.C. § 3729(b)(4)). "Under any understanding of the concept, materiality 'look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.'" Id. at 193 (quoting 26 R. Lord, Williston on Contracts § 69:12, p. 549 (4th ed. 2003)).

The upshot of the Court's opinion about materiality in this context was clear: "The materiality standard is demanding." Id. at 194. Elaborating, the Court said,

> The False Claims Act is not "an all-purpose antifraud statute," Allison Engine, 553 U.S., at 672, or a vehicle for punishing garden-variety breaches of contract or regulatory violations. A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. Materiality, in addition, cannot be found where noncompliance is minor or insubstantial.

Id. (citing United States ex rel. Marcus v. Hess, 317 U.S. 537, 543 (1943).

Finally, the Court explained, "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Id. at 195. This aligns with our Circuit's precedent finding the materiality "standard was a high one intended to keep FCA liability from attaching to noncompliance with any of potentially hundreds of legal requirements in a contract." United States v. Triple Canopy, Inc., 857 F.3d 174 (4th Cir. 2017) (internal quotation marks and citation omitted).

11

According to the Government, Defendants "received payment for services that should not have been paid because they billed the MCO for services for which they were not licensed, not credentialed, and/or were not qualified to bill and certainly received more money than they should have[.]" ECF No. 91 at 12.

As an initial matter, the parties disagree over what effect the capitated payment model has on the Court's analysis. Defendants argue that "unlike the fee-for-service model, false claims made by a provider under the MCO model are only material if the violation is 'material to [the] determination of the capitated payment amount.'" ECF No. 86-1 (quoting United States ex rel. Gray v. UnitedHealthcare Ins. Co., No. 15-cv-7137, 2018 WL 2933674, at *7 (N.D. Ill. June 12, 2018)). Gray is not the only court to reach this conclusion. See, e.g., United States ex rel. Holt v. Medicare Medicaid Advisors, Inc., No. 18-CV-00860-DGK, 2022 WL 3587358, at *5 (W.D. Mo. Aug. 22, 2022), aff'd, 115 F.4th 908 (8th Cir. 2024), and aff'd, 115 F.4th 908 (8th Cir. 2024) (Government's FCA counts "must be dismissed because they fail to adequately plead the presentment of a *claim* for payment by the *government*."); United States ex rel. Rasmussen v. Essence Grp. Holdings Corp., No. 17-3273-CV-S-BP, 2020 WL 4381771, at *6 (W.D. Mo. Apr. 29, 2020) ("the facts alleged demonstrate the violation was not material to CMS's payment decisions.").

The Government's position is that "false statements and claims made to an MCO can be material even where the MCO receives capitated payments from the Government." ECF No. 91 at 12. It points the Court to a Seventh Circuit decision rejecting a materiality challenge that the Government "offered no evidence that the alleged overcharges were capable of affecting the *government's* payment decision." United

12

States ex rel. Garbe v. Kmart Corp., 824 F.3d 632, 639 (7th Cir. 2016). Finding government money was used to pay the defendant and its false claims provided the basis for those payments, the Court concluded that "FERA's materiality rule requires only that the false record or statement influence the payment *or receipt* of money or property—no government decision is required." Id. Accordingly, it rejected defendant's argument. The Government also points to Commonwealth ex rel. Martino-Fleming v. S. Bay Mental Health Ctr., Inc., 334 F. Supp. 3d 394, 408 (D. Mass. 2018), for the premise that a false statement to an MCO can satisfy the materiality standard.

The Government appears to have misunderstood, at least in part, Defendants' arguments on this point. It claims "without support, Defendants incorrectly argue that because the MCO paid the false claims submitted to the MCO this alone defeats the materiality requirement. This argument has no basis, and if accepted, would incorrectly prevent FCA liability from attaching to any false claim submitted and paid by an MCO." ECF No. 91 at 15. The Court does not find Defendants made that argument. In their reply, Defendants addressed this: they "are not asking this Court to make a broad ruling that false claims made to MCOs can never be material. Rather, they are asking this Court to hold the government, like any other plaintiff, to its burden of proof on each element of its claims." ECF No. 93 at 8.

The Government's all-or-nothing approach to Defendants' argument is misplaced. It also fails to appreciate important nuances in the facts and evidence before this Court. This case is distinguishable from Garbe and Martino-Fleming for several reasons. As Defendants noted, Garbe was decided before Escobar. The argument presented to the Court in Garbe was broad: "Kmart's argument always has been that Relator failed to

13

establish materiality, not because it is impossible in the Part D context, but because he [did not produce] evidence to link Kmart's alleged overcharges to private, third-party PBMs and Plan Sponsors up to the public fisc." Reply Brief of Defendant-Appellant at 13, United States ex rel. Garbe v. Kmart Corp., 824 F.3d 632, 643 (7th Cir. 2016).

Defendants are not simply arguing that evidence of federal funding is lacking; their argument is that the Government's FCA allegations lack materiality because there is "no evidence that any of these alleged violations influenced the capitation rate." ECF No. 86-1 at 17. In response, the Government asserts, without a reasoned explanation or persuasive caselaw, that Defendants' "submission of false claims . . . easily meets the materiality standard . . . ." ECF No. 91 at 13.

Turning to the Martino-Fleming case, the facts are so different from the evidence before this Court that the case is not analogous for this analysis:

> (1) hundreds of South Bay employees were not licensed and were ineligible for licenses; (2) at least 28 clinic directors did not have one of the licenses required by the regulations, and 24 clinic directors did not have any type of license; (3) many clinicians could not obtain licenses because they had degrees from unaccredited schools, they had not taken the prerequisite licensing courses, some of their degrees were in programs such as art therapy and school counseling rather than one of the core disciplines, or they had not had the required internships; (4) even when employees did have the proper credentials, they did not have supervised training on a full-time basis once they obtained their master's degrees; (5) unqualified clinicians were not receiving the necessary supervision; and (6) in some facilities, none of the supervisors were independently licensed, and it was common to find unlicensed clinic and regional directors. Because every clinic needed to be managed by a core team of licensed individuals, every South Bay clinic, including the parent center, was in violation of the regulations. . . .
>
> Although H.I.G. and C.I.S. knew about the licensing violations, South Bay did not adopt the recommendations to rectify the noncompliance and continued submitting false claims to MassHealth, MBHP, and MCOs. It did not report the noncompliance to MassHealth. Over $120 million in unlawful reimbursements were made to South Bay.

Commonwealth ex rel. Martino-Fleming v. S. Bay Mental Health Ctr., Inc., 334 F. Supp. 3d 394, 400 (D. Mass. 2018).

In Martino-Fleming, defendants knew or had reason to know that hiring unqualified mental health clinicians who are not properly supervised by qualified mental health professionals as required by MassHealth regulations went to the heart of the bargain.

Relying on inapposite cases, the Government then claims its "allegations alone are enough to meet the post-Escobar materiality requirements." Id. at 15. Yet, "allegations alone" are not enough to resist summary judgment. Virginia Hosp. & Healthcare Ass'n v. Roberts, 671 F. Supp. 3d 633, 649 (E.D. Va. 2023) ("To defeat an otherwise properly supported motion for summary judgment, the non-moving party must rely on more than conclusory allegations, mere speculation or the building of one inference upon another, or the mere existence of a scintilla of evidence" concerning a material fact." (quoting Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 191 (4th Cir. 1997) (internal quotation marks and citations omitted)).

The Court finds Defendants' argument on materiality persuasive. Without any binding precedent to guide its analysis, the Court adopts the reasoning employed the courts in Gray, Holt, and Rasmussen. Defendants aptly note that the Government has advanced no evidence that any of the alleged violations in this case influenced the capitation rate. The Court finds that is the relevant question for determining materiality in this case. A fee-for-service model was not used here. The Government contends this finding somehow indicates no FCA case could survive where capitated payments are involved. That is not correct.

If the Government produced evidence that a provider was submitting false claims to increase the capitation rate, then that would be actionable. This is not a difficult scenario to imagine. For example, if a provider submitted bills for visits that never happened, individuals who were never seen, or with diagnoses far more severe than what a patient suffered from, to increase the capitation rate, materiality would not be an issue. But that is not present in the case before this Court.

The allegations here are limited to improper coding and a missing certificate. One of the improper codes used, T1023HE, was a *lower* paying code than the correct one. ECF No. 86-1 at 18. While that fact does not determine the Government's ability to allege an FCA violation, it is pertinent to the Court's intent and materiality determination. Nothing presented to this Court establishes that Defendants' use of the wrong codes went to the heart of the bargain like in Martino-Fleming.

Similarly, the Defendants' missing Certificate of Waiver, which required filling out an application and paying a $180 fee, is the sort of "minor or insubstantial requirement" described in Taylor that is insufficient for materiality. 39 F.4th at 190-91. Further, UniCare, the entity Renovo contracted with and provided its bills to, paid claims despite being aware of billing issues. See ECF No. 86-1 at 19. The record evidence also aligns with Defendants characterization of this case, which undercuts any argument that materiality can be established.

The Government has not met its burden on this element. For these reasons and those more fully stated in Defendants' briefing and supported by their exhibits, the Court finds the Government has not identified evidence from which a reasonable jury could conclude that Defendants claims to UniCare satisfy the demanding materiality standard.

### c. There is no cognizable unjust enrichment or payment by mistake.

For good reason, the parties spend little time addressing the two remaining counts in the amended complaint. Similarly, the Court will not belabor its analysis. The issue is fairly straightforward. The Government acknowledges that "UniCare contracted with healthcare providers, including The Renovo Center, LLC[.]" ECF No. 91 at 2.

The Government suggests it is permissible for it to bring common law claims in the alternative because the FCA does not expressly abrogate its ability to do so. Id. at 20-21 (citing United States ex rel. Mathewson v. Permier Med., Inc., No. 18-CV-165, 2023 WL 9060896 (D.S.C. Sept. 28, 2023)). While this is an accurate statement, it fails to address the upshot of Defendants' argument that these claims may no longer be pursued because Renovo's contract with UniCare precludes them. See ECF No. 86-1 at 25.

"The arguments that the Government does raise are unpersuasive. The fact that the Federal Rules of Civil Procedure permit a plaintiff to plead alternative, inconsistent theories of liability does not alter the analysis: the undisputed allegation of an enforceable contract that covers the underlying issues forces the court to conclude that these two counts of the complaint fail to state a claim for which relief could be granted." United States v. Savannah River Nuclear Sols., LLC, No. 1:16-CV-00825-JMC, 2016 WL 7104823, at *27 (D.S.C. Dec. 6, 2016) (collecting cases). "The fact that the federal government retains the right to raise common law claims like any other plaintiff, see United States v. Moffit, Zwerling & Kemler, P.C., 83 F.3d 660, 667 (4th Cir. 1996), does not mean that the government is entitled to proceed with common law claims where private plaintiffs would be barred." Id.; See United States ex rel. Doughty v. Oregon Health & Scis. Univ., No. 3:13-CV-01306-BR, 2017 WL 1364208, at *7 (D. Or. Apr. 11, 2017).

17

Thus, while the Court is highly skeptical the Government's unjust enrichment or payment by mistake claims would survive Defendants' motion for summary judgment if a contract did not exist, because one undisputably exists, the Court need not go that far. Accordingly, the Court finds summary judgment appropriate as to the Government's unjust enrichment and payment by mistake counts because these claims arise from a valid contract between Renovo and UniCare.

### III. Conclusion

For the reasons stated above and more fully explained in Defendants' memorandum of law in support of their motion for summary judgment, the Court does hereby **GRANT** the same. ECF No. 86. The Court also finds summary judgment is not warranted or appropriate for the Government, so its Motion for Summary Judgment is **DENIED**. ECF No. 89.

This case is therefore **DISMISSED WITH PREJUDICE**, and the Clerk of Court will enter a separate Judgment for Defendants. The Clerk is further **DIRECTED** to remove this case from the Court's active docket.

**DATED**: September 17, 2025

_____
GINA M. GROH
UNITED STATES DISTRICT JUDGE